912 F.2d 463
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William CONLEY, Petitioner-Appellant,
v.
WARDEN, MARYLAND PENITENTIARY, Respondent-Appellee.
 No. 89-7627.
 United States Court of Appeals, Fourth Circuit.
 Argued July 18, 1990.
Decided Aug. 27, 1990.
As Amended Sept. 20, 1990.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-87-1712-S)
 Beth Cook, Supervising Attorney, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, D.C., (argued), for appellant, Steven H. Goldblatt, Director, Maureen F. Del Duca, Supervising Attorney, Gregory K. Conway, Christopher S. Floyd, Timothy D. Gallagher, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, D.C., on brief.
 Thomas Kevin Clancy, Assistant Attorney General, Baltimore, Maryland, (argued), for appellee; J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 William Conley and his brother Chester Conley were prosecuted in Maryland for the kidnapping and murder of Dawn Burkman, the kidnapping of Lorraine Broadwater, and related sexual offenses. A jury found William Conley guilty of the kidnapping and murder offenses, and his brother, Chester, guilty on all counts.
 
 
 2
 William Conley is before this court seeking habeas relief pursuant to 28 U.S.C. Sec. 2254. In his habeas petition, William argues that his convictions should be set aside (1) because the trial judge failed to determine whether there was a conflict of interest resulting from the fact that the same attorney represented both of the brothers, (2) because there was an actual conflict of interest during the trial, and (3) because there was an actual conflict at the sentencing stage. The government argues (1) that William's claims are either not exhausted or procedurally barred, (2) that the trial court had no reason to believe there was a conflict of interest, and (3) that there was no actual conflict. The district court held that the trial court did not have a duty to inquire into the possibility of a conflict of interest in this case, and that there was no actual conflict. For the reasons provided below, we affirm.
 
 I.
 
 3
 Lorraine Broadwater and Dawn Burkman were hitchhiking around 9:30 p.m. on March 30, 1977, when they were picked up by two men in a faded maroon vehicle. The women sat together in the back seat of the car. The girls told the driver, William Conley, where to drop them off. William, however, did not stop at the girls' destination. Instead, Chester told William to pull up further and then Chester climbed into the back of the car. While William was still driving, a struggle began between Chester and Dawn Burkman. Burkman pushed up the front seat, opened the car door, and jumped to her death from the moving vehicle. Chester then assaulted Broadwater and threatened to kill her if she did not succumb to his sexual advances. The two brothers left her on the side of the road.
 
 
 4
 Broadwater picked out both men from separate photo displays. She also made a vocal identification of Chester, and provided a detailed description of him. She identified the car which belonged to Chester Conley's wife.
 
 
 5
 The Conley family retained E. Thomas Maxwell as trial counsel for both brothers. William maintained that he was not with his brother at the time of the crime, but was at a tavern between 8:30 p.m. and 11:30 p.m. Chester claimed that he was at home when the crime was committed. Witnesses testified that the maroon car was parked at the Conleys' cousin's house between 7:00 p.m. and 9:20 p.m. on March 30. Chester testified that his wife returned home with the car at 9:45 p.m. that night.
 
 II.
 
 6
 We note initially that the non-exhaustion and procedural bar issues were not considered by the district court in deciding whether to grant William Conley habeas relief, because they were not raised by the state. The state's failure to argue these issues does not prevent us from considering them on appeal. Granberry v. Greer, 481 U.S. 129, 133 (1987). Rather, the "court should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits" of the claim. Id. at 134. We believe that the interests of comity and federalism will be better served in this case by addressing the merits.
 
 III.
 
 7
 William argues that the court had a duty, under Holloway v. Arkansas, 435 U.S. 475 (1978), to determine whether there was a conflict of interest. We disagree.
 
 
 8
 In Holloway, the Supreme Court held that state trial courts must investigate objections to multiple representation. There was no objection to the joint representation in this case. And a state court has no independent duty to inquire into a conflict of interest unless put on notice of a possible conflict. Cuyler v. Sullivan, 446 U.S. 335, 346 (1980). As the Supreme Court states in Cuyler:
 
 
 9
 Absent special circumstances ... trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.... Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.
 
 
 10
 Id. at 347; see also United States v. Ramsey, 661 F.2d 1013, 1018 (4th Cir.1981) ("in the absence of a specific objection, the trial court may assume that multiple representation presents no conflict, and ... unless a trial court knows or reasonably should know that a particular conflict exists, it need not initiate an inquiry"), cert. denied, 455 U.S. 1005 (1982).
 
 
 11
 We agree with the district court that there was no duty to inquire in this case. William and Chester maintained that they were not at the scene of the crime. They had separate and not inconsistent alibi defenses, and never objected to the joint representation.
 
 
 12
 William argues that his pre-trial motion for severance on the basis of Bruton v. United States, 391 U.S. 123 (1968), put the court on notice of a potential conflict of interest. We disagree. The motion was based upon the possibility that an inmate would testify that Chester had made statements incriminating William. Chester denied having made any such statements. When it became apparent that the witness was not available to testify, defense counsel withdrew the severance motion and requested a joint trial. Both defendants agreed with this strategy and continued to argue that they were not at the scene of the crime. The Bruton motion did not put the trial court on notice of any particular conflict resulting from the joint representation.
 
 IV.
 
 13
 We also agree that there was no actual conflict either during trial or at the sentencing stage. William claims that separate counsel could have argued that Chester forced him, with threats of violence, to cooperate in the kidnapping and murder, and that there was less identification evidence implicating him in the crimes. William also argues that counsel could have bargained for a lighter sentence.* The problem with William's argument is that his proposed defense strategies are not supported by the evidence. "An alleged conflict of interest that obstructs the use of a particular strategy or defense is not significant unless the defense is plausible." Foxworth v. Wainwright, 516 F.2d 1072, 1080 (5th Cir.1975).
 
 
 14
 The eyewitness testimony provided no evidence that Chester forced William to do anything. Moreover, it would be difficult to argue that William was less involved in the kidnapping and murder. William was the driver, and was thus in control of the car. There is evidence that William increased his speed after Dawn Burkman jumped to her death from the vehicle. Finally, with respect to the sentencing claim, we agree with the trial court that prior to the sentencing hearing, William had already voluntarily supplied the judge with all of the information he had against Chester, and thus had nothing with which to bargain for a lighter sentence.
 
 V.
 
 15
 We thus find that there was no duty to inquire into a conflict of interest and that there was no actual conflict existing at trial or at sentencing. The defendants presented separate and not inconsistent alibi defenses. Their lawyer made a strategic decision to try them together so that he could present both alibi defenses to the jury at the same time. Neither William nor Chester ever objected to this joint representation. William cannot now succeed on a conflicts claim by arguing that counsel failed to present alternate defense theories which were not plausible and find no support in the record.
 
 
 16
 AFFIRMED.
 
 
 
 *
 After the trial, both William and Chester wrote letters to the trial judge accusing each other of involvement in the crimes, and providing other incriminating information. In a post-conviction hearing, the trial court found that there was no conflict of interest because the brothers had already volunteered their information prior to sentencing and had nothing left with which to bargain for a lesser sentence